AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

FILED
2012 OCT 25 A 10: 09
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

MAG

JCS

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Emmanuel Kwasi Amankwa | ) Case No. 3  12  7   17 |
| | ) |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ October 24, 2012 _____ in the county of _____ San Mateo County _____ in the _____ Northern _____ District of _____ California _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a), (b)(1)(B) | Possession with intent to distribute 500 or more grams of a mixture or substance containing cocaine |

This criminal complaint is based on these facts:
See attached affidavit of Special Agent Alex Chan

☑ Continued on the attached sheet.

Approval as to form
AUSA Matthew McCully

_____
*Complainant's signature*

Alex Chan, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/25/12

_____
*Judge's signature*

City and state: _____ San Francisco, California _____

United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT OF HSI SPECIAL AGENT ALEX CHAN
## IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

### I.  INTRODUCTION AND PURPOSE OF AFFIDAVIT

1.      This affidavit is submitted in support of a Criminal Complaint against Emmanuel Kwasi
Amankwa (Hereinafter referred to as AMANKWA) for violating Title 21, United States Code,
Section 841(a).  The facts set forth in this Affidavit are based on my training and experience as a
HSI Special Agent, my participation in this investigation, and conversations with other law
enforcement officers who are familiar with the facts and circumstances of this investigation.
Because this affidavit is submitted for a limited purpose, I have not included in it the details of
every aspect of the investigation.

### II.     AGENT'S BACKGROUND

2.      I am a Special Agent with U.S. Immigration and Customs Enforcement (ICE), Homeland
Security Investigations (HSI) assigned to the Office of the Resident Agent in Charge, San Francisco
International Airport (SFO) and have been employed by ICE since April 2003.  Prior to my
employment with ICE, I was employed as a United States Immigration Inspector at San Francisco
International Airport for 3 years.  I hold a Bachelor's degree on Business Administration from San
Francisco State University, California, and have completed Immigration Officer and Police Basic
Training, ICE/HSI Special Agent Training, and the Criminal Investigator Training Program at the
Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia.  While attending
FLETC, I received training in conducting immigration, financial and commercial fraud, strategic,
narcotics, and computer based investigations.  Furthermore, I received training in undercover
operations, and physical and electronic surveillance operations.  I also received specialized training
in United States federal firearms statutes.

3.      I am responsible for enforcing federal criminal statutes, including violations of Title 21 of
the United States Code.  I have received training and have actual experience relating to Federal
Criminal Procedures, Federal Statutes and U.S. Immigration and Customs Regulations.  In the
course of my career I have conducted or participated in numerous narcotics investigations wherein
methamphetamine, cocaine, marijuana, MDMA, firearms, and/or currency were seized.  Aside from
formal academy training I have attended training courses during which I received further training in

1

the laws and/or investigative techniques relating to: electronic intercepts, surveillance operations, concealed compartments, drug identification and emerging drug trends, drug conspiracy investigations.

4.     By virtue of my training and experience, and through my conversations with other experienced agents and officers who conduct drug investigations, I have become familiar with the methods used by drug traffickers to import, export, transport, safeguard, and distribute drugs, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds; and the methods used by drug traffickers to communicate with each other in furtherance of their illegal activities.

## III.     APPLICABLE LAW

5.     Title 21, United States Code, Section 841(a) make it unlawful for any person knowingly or intentionally "possess with intent to manufacture, distribute, or dispense 500 grams or more of a mixture or substance containing a detectable amount of coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph."

## IV.     FACTS ESTABLISHING PROBABLE CAUSE

6.     On October 23, 2012, AMANKWA arrived at the SFO on Jet Blue Flight 1432 from Long Beach, California. AMANKWA was scheduled to depart SFO via Japan Airlines Flight#1 to Tokyo, Japan. Criminal records check revealed that AMANKWA was arrested in 1992 at John F. Kennedy International Airport (JFK) in New York for attempting to smuggle 945.6 grams of heroin in a false sided suitcase, and AMANKWA was sentenced to 151 months in prison.

7.     HSI SFIA Agents conducted surveillance on AMANKWA in SFO, from his arrival on Jet Blue Flight# 1432 from Long Beach, California, to his boarding on Japan Airlines Flight # 1 bound to Tokyo, Japan. During the surveillance, AMANKWA was observed walking slow and bowlegged, and appeared to have a limp. AMANKWA was also observed clenching his stomach

2

several times and appeared to be in pain. Based on my training and experience, my knowledge of this investigation, from confidential sources, and from speaking with other law enforcement officers involved in this investigation, AMANKWA displayed the symptoms of a narcotics internal carrier. A "narcotics internal carrier" is a person who is carrying narcotics within his/her body, either having swallowed the narcotics, or having inserted the narcotics into his/her rectum. I have received training on the practices of narcotics internal carriers, including training in identifying such persons.

8.      AMANKWA was intercepted by U.S. Customs and Border Protection (CBP) while boarding his outbound flight to Japan. The Counter Terrorism Response (CTR) team officers met AMANKWA for a full enforcement interview/examination. During the interview, AMANKWA stated that he flew from New York and is en route to Japan. (This statement was a lie. AMANKWA had in fact just arrived from Long Beach, California.) AMANKWA then changed his story and stated he flew in from Los Angeles. AMANKWA stated that he is a spiritual doctor and would meet with unnamed people in Japan and provide a spiritual guidance conference for one week. AMANKWA stated that he would return to San Francisco and then changed the story again and stated he would return to New York. Due to the inconsistencies, AWANKWA was off loaded from the flight for a more intensive interview/exam.

9.      During the interview with CBP-CTR officers, AMANKWA stated the following: AMANKWA currently resides in New York and is a "spiritual soldier" as an occupation; AMANKWA's reservation was booked on October 20, 2012 through Costa Azul Travel located in Long Beach, California and was paid by check; AMANKWA was staying at the Economy Inn located at 439 W. Manchester Boulevard, Inglewood, California; AMANKWA is traveling to Japan for 1 week to meet with unnamed people to provide spiritual guidance and he paid for the tickets. However, AMANKWA changed his story numerous times with regard to his travel itinerary throughout the interview. AMANKWA was observed to be walking uncomfortably, refused to drink water and repeatedly applied chapstick.

3

10.    As part of the interview/examination process, CBP officers conducted a pat down search of
AMANKWA. During the pat down search on AMANKWA, CBP officers felt that AMANKWA's
stomach was extremely firm on all sides. When pressed, AMANKWA let out a painful groan.
AMANKWA was unable to suck in his stomach more than 3/4 of an inch. When he exhaled,
AMANKWA let out another painful groan.

11.    Based on these observations, CBP Officers believed that AMANKWA was concealing
narcotics within his body. At approximately 9:30 p.m., AMANKWA was transported to the Mills
Peninsula Hospital in Milbrae, California by CBP officers for monitored bowel movement.

12.    Upon his arrival at the Mills Peninsula Hospital, AMANKWA voluntarily signed an X-ray
consent form. AMANKWA was provided with a toilet for the monitored bowel movement and
requested a laxative to speed up the process and was provided "Golytely" laxative.

13.    The X-ray was conducted which yielded positive for foreign bodies (plastic). AMANKWA
freely admitted to CBP officers that he had swallowed 100 pellets. At approximately 2:02 a.m.,
AMANKWA passed 15 latex pellets. CBP officers tested the substance wrapped in latex material
with presumptive positive result for cocaine. From 2:02 a.m. to 3:01 p.m. on October 24, 2012,
AMANKWA passed a total of 81 pellets with a total weight of approximately 950 grams. Based on
AMANKWA's statement, I believe that he has 19 additional pellets in his body at this time. As of
4:00 p.m. on October 24, 2012, AMANKWA remains at the hospital under observation because of
the cocaine hidden in his body.

14.    At the present time, AMANKWA has passed 81 pellets with a gross weight of
approximately 950 grams. Based on AMANKWA's statements, I believe that he has a total of
approximately 1175 (gross weight) of pellets concealed within his body. Based on my training and
experience, I believe that the net weight of the mixture or substance contained within those pellets
is in excess of 500 grams.

4

## V.    CONCLUSION

15.    Based on the foregoing facts, my experience and training, and consultation with other law enforcement agents with experience in narcotics trafficking, I conclude that there is probable cause to believe **Emmanuel Kwasi Amankwa** did knowingly or intentionally possess with intent to distribute or dispense a controlled substance, specifically, cocaine, in violation of Title 21 United States Code, Section 841(a).

I declare under penalty of perjury that the above facts are true and correct to the best of my knowledge, information and belief.

DATED this 25th day of October 2012.

ALEX CHAN, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 25th day of October, 2012.

HON. JOSEPH C. SPERO
United States Magistrate Judge

Approved as to form:

Matthew McCarthy
Assistant U.S. Attorney

5

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☑ COMPLAINT ☐ INFORMATION ☐ INDICTMENT
☐ SUPERSEDING

─── OFFENSE CHARGED ───

21 U.S.C. 841(a)(1), (b)(1)(B)

☐ Petty
☐ Minor
☐ Misde-
meanor
☑ Felony

PENALTY:

As to each count:
Imprisonment of 5 to 40 years; Supervised Release of 4 years to
life; Fine of up to $5,000,000; Special Assessment of $100

─── Name of District Court, and/or Judge/Magistrate Location ───

NORTHERN DISTRICT OF CALIFORNIA

┌─── DEFENDANT ───

Emmanuel Kwasi Amankwa

DISTRICT COURT NUMBER

─────── DEFENDANT ───────

**IS NOT IN CUSTODY**

1) ☐ Has not been arrested, pending outcome this proceeding.
If not detained give date any prior
summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☑ On this charge

5) ☐ On another conviction } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

─── PROCEEDING ───

Name of Complainant Agency, or Person (& Title, if any)

Alex Chan, Department of Homeland Security

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:
☐ U.S. ATTORNEY ☐ DEFENSE

SHOW
DOCKET NO.
}

☐ this prosecution relates to a
pending case involving this same
defendant

MAGISTRATE
CASE NO.

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under
}

Name and Office of Person
Furnishing Information on this form Melinda Haag

☑ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned) Matthew L. McCarthy

Has detainer ☐ Yes
been filed? ☑ No

If "Yes"
give date
filed
}

DATE OF
ARREST ▶ Month/Day/Year
10/23/2012

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED
TO U.S. CUSTODY ▶ Month/Day/Year

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☑ WARRANT

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

Bail Amount: NO BAIL

* Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____ Before Judge: _____

Comments: _____